UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| MAXWELL KELLER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRONOX HOLDINGS PLC, JOHN D. ROMANO, and D. JOHN SRIVISAL, <br><br> Defendants. | Case No.  3:25-cv-01441-KAD <br><br> **November 3, 2025** |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF TRAVIS GRUBE AND DEAN GAUTIER FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF CO-LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

    I.      GRUBE AND GAUTIER SHOULD BE APPOINTED LEAD PLAINTIFFS ..... 4

          A.     Grube and Gautier Are Willing to Serve as Class Representatives ............ 5

          B.     Grube and Gautier Have the "Largest Financial Interest" in the Action .... 5

          C.     Grube and Gautier Otherwise Satisfy the Requirements of Rule 23 .......... 6

          D.     Grube and Gautier Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses ................................... 10

    II.     LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................. 10

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnet v. Elan Corp., PLC*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ..................................................................................9

*Dookeran v. Xunlei Ltd.*,
  No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .......................8

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................8

*Galmi v. Teva Pharms. Indus.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)...............................................................6, 7, 8

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).........9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...................................................................................6, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .........6

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ................................................................................11

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..........................................................................6

*Janbray v. Canadian Solar, Inc.*,
  272 F.R.D. 113 (S.D.N.Y. 2010) ..............................................................................7

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ............................................................................10

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015).......................................................................6

*Labul v. XPO Logistics, Inc.*,
  No. 3:18-CV-2062 (VLB), 2019 WL 1450271 (D. Conn. Apr. 2, 2019) ..............6, 7

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)..................................5, 6

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ...............................................10

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) .........................................9

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................................9

## Statutes

15 U.S.C. § 78u-4 ....................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ..................................................... *passim*

## Rules

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Travis Grube and Dean Gautier (collectively, "Grube and Gautier") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Grube and Gautier as Lead Plaintiffs on behalf of a class (the "Class") consisting of all investors who purchased or otherwise acquired Tronox Holdings PLC ("Tronox" or the "Company") common stock between February 12, 2025 and July 30, 2025, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") and The Schall Law Firm ("SLF") as Co-Lead Counsel for the Class.

PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act.  Tronox investors, including Grube and Gautier, incurred significant losses following the disclosures of the alleged fraud, which caused Tronox's share price to fall sharply, damaging Grube and Gautier, as well as other Tronox investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants with the largest financial interest in the outcome of the Action and who satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In connection with their transactions in Tronox common stock during the Class Period, Grube and Gautier incurred aggregate losses of approximately $1,199.  *See* Declaration of Emily C. Finestone in Support of Motion ("Finestone Decl."), Exhibit ("Ex.") A.  Accordingly, Grube and Gautier believe that they have the largest financial interest in the relief sought in this Action.  Beyond their financial interest, Grube and Gautier also meet the applicable requirements

1

of Rule 23 because their claims are typical of those of absent Class members and they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Lead Plaintiffs and vigorously prosecute this Action on behalf of the Class, Grube and Gautier have selected Pomerantz and SLF as Co-Lead Counsel for the Class. Both firms and their attorneys are highly experienced in the areas of securities litigation and class actions, having successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Grube and Gautier respectfully request that the Court enter an Order appointing Grube and Gautier as Lead Plaintiffs for the Class and approving their selection of Pomerantz and SLF as Co-Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaint in the Action, Tronox operates titanium-bearing mineral sand mines and processes them to produce titanium dioxide (TiO2) products. Dkt. No. 1 ¶ 19. It offers TiO2 pigment; ultrafine specialty TiO2; zircon; high purity pig iron; monazite; feedstock; and titanium tetrachloride products. *Id*. The Company's products are used for the manufacture of paints, coatings, plastics, and paper, as well as various other applications. *Id*.

Defendants provided investors with material information concerning Tronox's overall expected growth and strength in the Company's pigment and zircon commercial division. *Id.* ¶ 2. Defendants' statements included, among other things, confidence in Tronox's ability to achieve its fiscal 2025 revenue growth projections on back of its ability to both appropriately forecast and execute upon the alleged demand for its TiO2 and zircon products. *Id.*

Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material

2

adverse facts concerning the true state of Tronox's ability to forecast the demand for its pigment and zircon products or otherwise the true state of its commercial division. *Id.* ¶ 3. Despite making lofty long-term projections, Tronox's forecasting processes fell short as sales continued to decline and costs increased, ultimately, derailing the Company's revenue projections. *Id.* Such statements absent these material facts caused Plaintiff and other shareholders to purchase Tronox's securities at artificially inflated prices. *Id.*

On July 30, 2025, Tronox announced its financial results for the second quarter of fiscal 2025, revealing a significant reduction in TiO2 sales for the quarter. *Id.* ¶ 4. The Company attributed the decline to "softer than anticipated coatings season and heightened competitive dynamics." *Id.* As a result of the setback in sales, Defendants revised the Company's 2025 financial outlook lowering its full-year revenue guidance and reducing its dividend by 60%. *Id.* On July 31, 2025 Defendants held a corresponding earnings call where Defendants discussed the Company's disappointing second quarter 2025 results, provided details of the Company's sharp revenue decline for the second quarter 2025, and discussed the sequential decline in TiO2 volumes and lowering the Company's dividend by 60%. *See id.* ¶¶ 32–34.

Investors and analysts reacted immediately to Tronox's revelation. *Id.* ¶ 5. The price of Tronox's common stock declined dramatically. *Id.* From a closing market price of $5.14 per share on July 30, 2025, Trox's stock price fell to $3.19 per share on July 31, 2025, a decline of about 38% in the span of just a single day. *Id.*

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Tronox's securities, Grube, Gautier and other Class members have suffered significant losses and damages. *See id.* ¶ 39.

ARGUMENT

I.      GRUBE AND GAUTIER SHOULD BE APPOINTED LEAD PLAINTIFFS

Grube and Gautier should be appointed Lead Plaintiffs because they have timely filed a motion for appointment as Lead Plaintiffs, have the largest financial interest in this litigation to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires a plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Grube and Gautier satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

4

A.      Grube and Gautier Are Willing to Serve as Class Representatives

On September 3, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Tronox and other defendants, and advising investors in Tronox securities that they had until November 3, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff.  *See* Finestone Decl., Ex. B.

Grube and Gautier have filed the instant motion pursuant to the Notice, and each has attached a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Grube and Gautier satisfy the first requirement to serve as Lead Plaintiffs of the Class.

B.      Grube and Gautier Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, Grube and Gautier have the largest financial interest of any Tronox investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5

5

(N.D. Ill. Aug. 11, 1997).  In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted and routinely applied by courts in this District.  *See Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 497 (D. Conn. 2017); *Labul v. XPO Logistics, Inc.*, No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *4 (D. Conn. Apr. 2, 2019).  Of the *Lax* factors, courts in the Second Circuit generally emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Teva*, 302 F. Supp. 3d at 497-98; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

In connection with their transactions in Tronox common stock during the Class Period, Grube and Gautier incurred aggregate losses of approximately $1,199.  *See* Finestone Decl., Ex. A. As such, Grube and Gautier believe that they possess the largest financial interest in the outcome of this litigation within the meaning of the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.      Grube and Gautier Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

---

[1] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; rather, "[a]t this early stage in the litigation, the proposed lead plaintiff must only meet its prima facie burden of establishing its adequacy and typicality." *Galmi*, 302 F. Supp. 3d at 505; *see also Labul*, 2019 WL 1450271, at *5 (same). In addition, "[t]ypicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA." *Labul*, 2019 WL 1450271, at *5 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009)). Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Grube and Gautier. *See* Dkt. No. 1 ¶¶ 49, 52.

The typicality requirement of Rule 23(a)(3) "is satisfied by showing that each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Galmi*, 302 F. Supp. 3d at 505 (quoting *Janbray v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay*, 272 F.R.D. at 120 (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Grube and Gautier's claims are typical of those of the Class. Grube and Gautier allege, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Tronox, or

7

by omitting to state material facts necessary to make the statements they did make not misleading. Grube and Gautier, like other Class members, purchased or otherwise acquired Tronox common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Tronox's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Galmi*, 302 F. Supp. 3d at 505 (quoting *Alibaba*, 102 F. Supp. 3d at 536); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (same); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Grube and Gautier are both adequate representatives for the Class. As set forth in greater detail below, in Pomerantz and SLF, Grube and Gautier have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz and SLF to the Court for approval as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Grube and Gautier's interests and those of the Class. Moreover, Grube and Gautier have both submitted sworn Certifications declaring their commitment to protecting the interests of the Class (*see* Finestone Decl., Ex. C), and their monetary losses as a result of the Defendants' alleged

8

malfeasance demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Moreover, Grube and Gautier constitute an appropriate movant duo of the type routinely appointed to serve as Co-Lead Plaintiffs. *See, e.g.*, *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors as co-lead plaintiffs pursuant to the PSLRA); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (Citation omitted.)).

Grube and Gautier likewise have demonstrated their adequacy because they are a cohesive duo who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of Lead Plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this Action on behalf of the Class. *See* Finestone Decl., Ex. D. Courts routinely appoint more than one movant as co-lead plaintiffs under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-

9

6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

> D.    Grube and Gautier Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption favoring Grube and Gautier's appointment as Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Grube and Gautier's ability and desire to fairly and adequately represent the Class has been discussed above.  Neither Grube nor Gautier is aware of any unique defenses Defendants could raise that would render either of them inadequate to represent the Class.  Accordingly, Grube and Gautier should be appointed Lead Plaintiffs for the Class.

II.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with the Lead Plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v.*

*China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Grube and Gautier have selected Pomerantz and SLF as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Finestone Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

SLF is also highly experienced in the areas of securities litigation and class actions, having served as co-lead or additional counsel in numerous successful securities class actions. *See id.*, Ex. F. SLF currently serves as co-lead counsel in *Kula v. Fastly, Inc.*, No. 4:25-cv-03170 (N.D. Cal.) and *Bergman v. Caribou Biosciences, Inc.*, No. 3:23-cv-01742 (N.D. Cal.), among other securities class action lawsuits. *See id.*

11

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Grube and Gautier's counsel, Pomerantz and SLF, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute this Action effectively and expeditiously under Grube's direction. Thus, the Court may be assured that by approving Grube and Gautier's selection of Pomerantz and SLF as Co-Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Grube and Gautier respectfully request that the Court issue an Order: (1) appointing Grube and Gautier as Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz and SLF as Co-Lead Counsel for the Class.

Dated:  November 3, 2025                    Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Emily C. Finestone*
                                            Emily C. Finestone (Bar No. ct30250)
                                            Jeremy A. Lieberman
                                            (*pro hac vice* application forthcoming)
                                            J. Alexander Hood II
                                            (*pro hac vice* application forthcoming)
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (917) 463-1044
                                            efinestone@pomlaw.com
                                            jalieberman@pomlaw.com
                                            ahood@pomlaw.com

                                            THE SCHALL LAW FIRM
                                            Brian Schall
                                            (*pro hac vice* application forthcoming)
                                            Adam Rosen
                                            (*pro hac vice* application forthcoming)
                                            2049 Century Park East, Suite 2460
                                            Los Angeles, CA 90067
                                            Telephone: (310) 301-3335
                                            Facsimile: (213) 519-5876

12

brian@schallfirm.com
adam@schallfirm.com

*Counsel for Travis Grube and Dean Gautier and*
*Proposed Co-Lead Counsel for the Class*

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Emily C. Finestone*
Emily C. Finestone