**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MAXWELL KELLER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRONOX HOLDINGS PLC, JOHN D. ROMANO, and D. JOHN SRIVISAL, <br><br> Defendants. | Case No.: 3:25-cv-01441-KAD |

**<u>MOVANT JASON D. SMITH'S REPLY TO</u>**
**<u>COMPETING MOTIONS FOR LEAD PLAINTIFF</u>**

Movant John Harding mistakenly accuses Jason D. Smith of being a "day trader" because he bought and sold Tronox stock on just two days during the Class Period (which consists of 115 business days). Importantly, this does not disqualify him as a "day trader" or otherwise subject him to a unique defense. *See Chauhan v. Intercept Pharms.*, No. 21-cv-00036(LJL), 2021 U.S. Dist. LEXIS 13369, at *20 (S.D.N.Y. Jan. 25, 2021) (declining to disqualify presumptive lead plaintiff who bought and sold during class period "absent evidence that [he] did not rely on the integrity of the market price"); *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191, *10 (D. Colo. May 29, 2012) (rejecting speculation that a movant "is atypical or inadequate based upon his frequent trading activity"); *Stoopler v. Direxion Shares ETF Tr.*, No. 09-cv-8011, 2010 U.S. Dist. LEXIS 82296, at *13-14 (S.D.N.Y. Aug. 12, 2010), as corrected (Aug. 16, 2010) (declining to disqualify presumptive lead plaintiff despite his admission that he engaged in day trading early in the class period because even if any unique defense based on his day trading were applicable, it would not apply in the later part of the class period).[1]

While Mr. Smith bought *and* sold stock on two days during the Class Period (April 3 and July 30), that does *not* render him a "day trader." FINRA Rule 4210 describes a pattern day trader as, "any customer who executes four or more day trades within five business days [...] The minimum equity requirement for a 'pattern day trader' is $25,000" in a margin account. *See* FINRA Rule 4210(f)(8)(B) (2025) (available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/4210) (last accessed December 5, 2025). Mr. Smith does not meet

---

[1] Despite the number of *transactions* appended to his Certification (ECF No. 11-3), the number of *orders* Mr. Smith made is smaller. This is because his broker occasionally split and filled Mr. Smith's orders through different transactions in accordance with its "best execution" duties. *See* FINRA Rule 5310, Best Execution and Interpositioning. *See also* U.S. SEC, *Trade Execution: What Every Investor Should Know* (Jan. 15, 2013) (explaining "Duty of 'Best Execution'") (available at https://www.sec.gov/about/reports-publications/investorpubstradexec) (last accessed December 5, 2025).

that classification because he did not buy *and* sell stock on more than two days during the Class Period.

Courts routinely appoint shareholders who purchase and sell stock throughout the Class Period. *See Weston v. Docusign, Inc.*, No. 22-cv-00824-WHO, 2022 U.S. Dist. LEXIS 80351, at *15 (N.D. Cal. Apr. 18, 2022) (rejecting argument that "in-and-out" trades rendered movant inadequate or subject to unique defense); *Pearlstein v. Blackberry Ltd.*, 2021 U.S. Dist. LEXIS 14888, at *29 (S.D.N.Y. Jan. 26, 2021) (rejecting "in-and-out" argument where movant held shares through corrective disclosure); *Wilson v. LSB Indus.*, 2018 U.S. Dist. LEXIS 138832, at *16-18 (S.D.N.Y. Aug. 13, 2018) (holding movant who "continually traded LSB stock throughout the Class Period" not subject to unique defense based on intra-class period trading because, in part, he held "net positive position").[2] Put simply, "selling shares during the class period does not

---

[2] *See also Perez v. Hexo Corp.*, No. 19-cv-10965 (NRB), 2020 U.S. Dist. LEXIS 32381, at *9-*10 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom In re HEXO Corp. Sec. Litig.*, No. 19-cv-10965, 2020 U.S. Dist. LEXIS 32381, (S.D.N.Y. Sept. 11, 2020) (whether presumptive lead plaintiff was a day trader was immaterial given "prevailing view in this Circuit that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intraclass conflicts'"); *Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 U.S. Dist. LEXIS 195360, *20 n. 6 (N.D. Cal. Nov. 8, 2019) ("courts in the Ninth Circuit have held that being a day trader is not necessarily disqualifying"); *Sklar v. Amarin Corp. PLC*, No. 13-cv-06663 (FLW), 2014 U.S. Dist. LEXIS 103051, *30 (D.N.J. July 29, 2014) ("most other courts" have held that allegations of day trading are not sufficient to rebut a prima facie showing of adequacy and rejecting the argument that because the movant was a "day trader" with numerous transactions on the same trading day that he was not adequate); *In re Zynga, Inc. Secs. Litig.*, No. C 12-04007 JSW, 2013 U.S. Dist. LEXIS 9314, at *6 (N.D. Cal. Jan. 22, 2013) ("the Court finds that whether [movant] is a day trader is inconsequential to his request to be appointed lead plaintiff"); *Prefontaine v. Research in Motion Ltd.*, No. 11-cv-4068, 2012 U.S. Dist. LEXIS 4238, at *13 (S.D.N.Y. Jan. 5, 2012) ("Although District 9 points to case law outside this Circuit in which day traders were prohibited from serving as lead plaintiffs because they may not have relied on the integrity of the market in making trades, and were thus potentially subject to a unique defense, the prevailing view in this Circuit is that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.'") (citing *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 108 (S.D.N.Y. 2004), *rev'd on other grounds* 471 F.3d 24 (2d Cir. 2005)).

disqualify a class member from being appointed lead plaintiff." *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) (citing *Freudenberg v. E\*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 U.S. Dist. LEXIS 62767, at \*20-21 (S.D.N.Y. July 16, 2008) and *Montoya v. Mamma.com, Inc.*, No. 05 Civ. 2313, 2005 U.S. Dist. LEXIS 10224, at \*6 (S.D.N.Y. May 31, 2005)); *see also In re Virtus Inv. Partners, Inc.*, No. 15cv1249, 2017 U.S. Dist. LEXIS 73554, at \*7 (S.D.N.Y. May 15, 2017) ("buying and selling shares throughout the class period is 'not atypical in a class that contains . . . numerous sophisticated investors.'") (citation omitted).

To the contrary, he researched the company thoroughly and then spent several weeks purchasing stock until reaching a position of 6,000 shares retained by the end of the Class Period. *See* ECF No. 11-4. Nothing about Mr. Smith's trading activity rises to the level of proof necessary to rebut his status as the presumptive lead plaintiff in this action. *See In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 & n.9 (D. Conn. 2006) (appointing hedge fund where "contrary to [movant's] suggestion, [hedge fund] did not engage in over 900 trades" but instead used "an online discount brokerage . . . which uses a technique it calls SmartRouting to achieve the optimal share price . . . when executing its trade orders . . . which involves breaking down a single large order into smaller lots and spreading these 'order legs' across multiple market centers to achieve the best price for an order.") (internal quotations omitted). "Without more of a showing regarding why [Mr. Smith] would be inadequate as a lead plaintiff . . . the Court cannot conclude that there is sufficient proof that [Mr. Smith] is subject to a unique defense." *Lavin v. Virgin Galactic Holdings*, No. 21-CV-3070 (ARR) (TAM), 2021 U.S. Dist. LEXIS 226069, at \*21-22 (E.D.N.Y. Sep. 17, 2021) (citing *Pirelli*, 229 F.R.D. at 415 ("In light of . . . the lack of any specific showing as to why transactions by day-traders or in-and-out traders should be disregarded or discounted in an execution price fraud case such as this, [the] allegation does not suffice to establish that [movant]

is subject to a unique defense here.")). For example, unlike the movant who was disqualified in *Galmi*, it was not his trading activity that rendered him inadequate but instead that he was in fact "controlled by counsel." *Galmi v. Teva Pharm. Indus.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017). The appointment of Mr. Smith as lead plaintiff would not "unnecessarily complicate and/or stall the litigation," as there is no "evidence that [she] may be subject to the unique defense that [she] did not actually rely on the company's alleged misstatements." *Id*.

As the movant with the largest financial interest (compared to Mr. Harding's *de minimis* loss of just $202), Mr. Smith is the presumptive lead plaintiff. The "strong presumption" in favor of appointing Mr. Smith as Lead Plaintiff can only be rebutted with "proof" that Mr. Smith is somehow atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Facebook, Inc.,* 288 F.R.D. 26, 40 (S.D.N.Y. Dec. 6, 2012) ("*exacting proof*" necessary to "rebut the PSLRA's presumption" in favor of most adequate lead plaintiff). "Mere speculation" is insufficient to rebut the lead plaintiff presumption. *In re Turquoise Hill Res. Ltd.,* No. 20-cv-8585 (LJL), 2021 US Dist LEXIS 8840, at *14 (S.D.N.Y. Jan. 15, 2021) (citing *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff.")). No such proof exists here. Mr. Smith has no conflicts with the class and is motivated to recover as much as possible. Accordingly, Mr. Smith's motion should be granted in its entirety.

4

Dated: December 8, 2025

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

*Attorneys for Jason D. Smith and [Proposed] Lead Counsel for the Class*

5