**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MAXWELL KELLER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRONOX HOLDINGS PLC, JOHN D. ROMANO, and D. JOHN SRIVISAL, <br><br> Defendants. | **CASE No.: 3:25-cv-01441-KAD** <br><br> **REPLY MEMORANDUM OF LAW OF JOHN HARDING IN FURTHER OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTION** <br><br> <u>**CLASS ACTION**</u> |

Lead Plaintiff Movant John Harding ("Mr. Harding") respectfully submits this reply in further opposition to the remaining competing lead plaintiff motion filed by Jason D. Smith. Dkt. No. 11. [1]

Preliminarily, Mr. Smith does not argue that Mr. Harding is inadequate or atypical. *See generally* Dkt. No. 23. Therefore, he concedes that Mr. Harding is adequate and typical. By contrast, as Mr. Harding explained, Mr. Smith is inadequate and atypical, and inflated his financial interest. Dkt. No. 21 at 3-6. The sloppiness of his materials further calls his adequacy into question. *Id.* at 5-6. In his opposition, Mr. Smith continues to falsely claim that he is adequate and typical, and makes an argument against Mr. Harding (with regards to his loss) that is inconsistent with that made by his own counsel in another case.

---

[1] On November 24, 2025, Dean Gautier and Travis Grube effectively abandoned their motion by filing a notice of non-opposition to competing lead plaintiff motions, noting that they did not have the "largest financial interest." Dkt. No. 22.

1

In sum, Mr. Harding is the only movant who has demonstrated his adequacy and typicality. He has the greatest loss out of any adequate and typical movant. As a result, he is entitled to lead plaintiff status.

## ARGUMENT

### I.    Mr. Smith is Inadequate and Atypical and Further Demonstrates His Antagonism Towards Fellow Class Members.

Mr. Smith is inadequate and atypical because of his status as a day trader and because he impermissibly inflated his loss by not accounting for the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005), which prohibits a movant from claiming losses on transactions that occurred before a corrective disclosure. Dkt. No. 21, at 3-5.

Mr. Smith's status as a day trader could lead to defendants raising "unique defenses against [Mr. Smith] that would unnecessarily complicate and/or stall the litigation." *Id.* at 4 (internal citation omitted). It follows that this unique defense creates antagonism between Mr. Smith and fellow class members because it could motivate him to, for example, settle the case at an unreasonably low figure vs. continue to prosecute the action, out of fear that defendants will raise the issue.

Further, he submitted deficient materials that make it difficult to decipher what his recoverable loss is. *Id*. at 5. As a result of the foregoing, even if Mr. Smith does have a greater loss than Mr. Harding, a showing has been made that Mr. Smith is "subject to unique defenses that render [Mr. Smith] incapable of adequately representing the class" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

In his opposition, Mr. Smith continues to demonstrate his inadequacy by showing that his interests are antagonistic to class members with small losses, like Mr. Harding. First, he continues to claim a loss figure that is not adjusted for *Dura* and argues that his claims are

typical of other class members, which as has been demonstrated, is false. *See generally* Dkt. No. 23 at 3-4. On this false premise, Mr. Smith and his counsel, Levi & Korsinsky, LLP ("L&K") now disparage class members with smaller losses and so conclusively show that Mr. Smith's interests are antagonistic to and not aligned with other class members.

Specifically, Mr. Smith now argues that Mr. Harding does not have a "***legitimate***" financial interest because he lost only $202.20. *See* Dkt. No. 23 at 8 (Emphasis added). Similarly, L&K claimed that the group comprised of Travis Grube and Dean Gautier did "not possess any ***serious*** financial incentive". *Id.* at 7. (Emphasis added). As a result, Mr. Smith cannot be trusted to be an advocate for a broad class of investors which will inevitably include those with smaller losses.

Assuming even arguendo that Mr. Smith has the largest financial interest, the PSLRA states that any presumption in favor of the movant with the largest financial interest may be rebutted by a fellow class member showing that the movant will "not ***fairly*** and adequately protect the interests of the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) (Emphasis added). How can Mr. Smith be expected to "fairly" represent class members when he is subject to unique defenses that could derail the litigation, and further demonstrates his antagonism to class members with small losses?

In addition, Mr. Smith's argument that Mr. Harding "can [. . .] not serve as the lead plaintiff" due to having a small loss, is demonstrably false. The position taken by Mr. Smith and L&K regarding the status of movants with smaller losses is at stark odds with that taken by L&K in a prior case where defense counsel, in opposing L&K's lead plaintiff motion (on behalf of a movant who lost $240.23, similar to Mr. Harding's loss), cited the *same exact cases* that L&K now cites in opposition to Mr. Harding's motion. It is telling that L&K vigorously

opposed defense counsel in that prior case, but now makes the same failed argument when confronted by a challenge to their client's adequacy and typicality.

Specifically, L&K cites (1) *McCormack v. Dingdong (Cayman) Ltd.*, 2022 WL 17336586 (S.D.N.Y. Nov. 30, 2022); (2) *Guo v. Tyson Foods, Inc.*, 2022 WL 5041798, at *5 (E.D.N.Y. Sept. 30, 2022); and (3) *Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) in its opposition. Dkt. No. 23, at 8. These are outlier cases that L&K has previously (and convincingly) argued against in a similar context.

In *Olsson v. PLDT Inc. et al.*, 2:23-cv-00885-CJC-MAA (C.D. Cal. 2023), Dkt. No. 9, L&K filed a lead plaintiff motion on behalf of a movant named Kevin Douglas. L&K claimed that Douglas's "DURA LIFO Total" loss, in consideration of the Supreme Court's decision in *Dura*, was $240.23. *See* Declaration of Brittany S. Cates ("Declaration"), Exhibit 1.

In *Olsson*, Dkt. No. 19, the defendants' counsel filed a brief in opposition to Douglas's motion, as well as another movant with a smaller loss. Declaration, Exhibit 2. Like L&K does here, defense counsel cited *Bosch*, *Guo*, and *McCormac*k. *Id*. at 2, 5. In response, L&K persuasively argued that the PSLRA does not preclude small investors from serving as lead plaintiff. *See generally* Declaration, Exhibit 3, at 4-12. L&K cogently explained why the court should not follow the *McCormack, Bosh*, and *Guo* decisions. *Id*. at 10-12. L&K even noted that it had been appointed lead counsel with a movant who had **$75** in losses. *Id*. at 7. L&K cited cases from within this Circuit where movants had been appointed with $77, 65 and $23.89 in respective losses. *Id.* (citing *Pratyush v. Full Truck Alliance Co. Ltd*. No. 1:21-cv-03903-LDH-MMH, ECF No. 11 (E.D.N.Y. July 1, 2022); *Solomon v. Sprint Corporation*, et al., No. 1:19-cv-05272-MKV, 2020 U.S. Dist. LEXIS 84756, at *5-6 (S.D.N.Y. May 13, 2020); *Baldwin v. Net 1*

*UEPS Techs., Inc.*, No. 19-cv-11174 (PKC) 2020 U.S. Dist. LEXIS 53522, at *7 (S.D.N.Y. Mar. 25, 2020)).

In *Olsson*, the court rejected defense counsel's argument that movants with small losses do not have a sufficient financial interest to be a class representative, because "[t]he PSLRA's lead plaintiff provisions do not erect a barrier that prevents any plaintiff with a small stake from representing a class." *Olsson v. PLDT Inc*. 2023 WL 3139912 at *3 (C.D. Cal. Apr. 26, 2023) (appointing Douglas lead plaintiff) (quoting *Nayani v. LifeStance Health Grp*., Inc., 641 F.Supp.3d 57, 64 (S.D.N.Y. 2022)) (Rakoff, J.) (citation updated to reported)

Further undermining Mr. Smith's argument, in 2024, in *Pujo v. EHang Holdings Limited et al*., 2:23-cv-10165 (C.D. Cal. 2024), under Dkt. No. 12, L&K filed a lead plaintiff motion on behalf of a movant named Sean Bradley. Mr. Bradley's loss, while accounting for the *Dura* decision, was $422.26. *Id*., Declaration, Exhibit 4.

L&K's willingness to file lead plaintiff motions with investors with small losses such as Bradley and Douglas *after* the issuance of the *Bosch*, *Guo*, and *McCormack* decisions, and to persuasively argue against those decisions in *Olsson*, reflects how disingenuous L&K's present argument is. Even considering the argument arguendo, the body of caselaw from within this Circuit holds that investors with small losses are not barred from serving as lead plaintiff.

In *Nayani*, Judge Rakoff rejected arguments from defendants that neither of two movants (claiming $608 and $385 in respective losses) would be adequately incentivized to pursue an action, because it was "at odds with both the text and the purpose of [the] PSLRA, not to mention one of the main purposes of aggregate litigation itself." 641 F. Supp.3d at 62, 64. Indeed, "[t]he [raison d'etre] of the class action is to bring justice to ***individual plaintiffs*** who have meritorious claims but relatively little at stake." *Id.* at 64. (Emphasis added) (citing

5

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

Further, "[e]ven if all moving plaintiffs have only a small financial interest at stake, one of the movants might nonetheless satisfy Rule 23's adequacy requirement if he demonstrates his willingness and ability to represent the interests of the class." *Nayani,* 641 F.Supp.3d at 64. Mr. Harding has already demonstrated his willingness and ability to protect the class. First, Mr. Harding retained experienced and qualified counsel to prosecute the action. Second, if it were not for Mr. Harding, Mr. Smith's efforts to be appointed lead plaintiff would have been unopposed even though he faces unique defenses due to, among other things, his status as a day trader.

This makes sense. In drafting the PSLRA, Congress could have placed a minimum loss requirement on movants—it didn't. *See generally* 15 U.S.C. § 78u-4. Given that Congress did not place a minimum threshold, courts should not do so either. Limiting investors with small losses from serving as lead plaintiff creates an unworkable rule that would not be applied uniformly across courts. This is in large part because counsel such as L&K would be incentivized and willing to make the cynical and disingenuous argument that a movant doesn't have a "serious" financial interest in one court, while arguing repeatedly in another court that movants with similar losses are adequate and typical. L&K does not argue what an appropriate minimum loss threshold should be. *See generally* Dkt. No. 23.

Mr. Harding also raised various arguments regarding the atypicality and inadequacy of the Tronox Investor Group beyond their mere status as a group, that Mr. Smith seems to have overlooked in his opposition. *Compare* Dkt. No. 21 at 6-11 *with* Dkt. No. 23 at 7-8. As such, Mr. Harding has demonstrated that he and his counsel will vigorously protect the class's interests.

II.    **Mr. Smith Should Provide a Loss Calculation that Accounts for his Pre-Disclosure sales.**

The irony of Mr. Smith's argument regarding small losses is that he might not have, by *his own counsel's* argument, a "serious financial incentive" to oversee this litigation because, as Mr. Harding explained, Mr. Smith's recoverable loss appears to be inflated as a result of pre-disclosure sales. Dkt. No. 21 at 4.

Mr. Harding argued in his opposition that Mr. Smith should provide a loss chart that accounts for the Supreme Court's decision in *Dura*, in light of his repeated pre-disclosure sales. Dkt. No. 21, at 5. L&K did not provide one with its opposition briefing and should now do so on reply. L&K has previously submitted loss charts that account for *Dura* and should do so here.

In the loss chart L&K submitted in *Olsson*, L&K argued that Douglas had a $230.23 "DURA LIFO* Total". In the asterisk explaining what "DURA LIFO" total means, L&K explained that this was "[d]isregarding losses not attributable to the alleged fraud from intra-class period sales made ***prior to any corrective disclosure*** matched to intra-class period purchases." *See* Exhibit 1 (Emphasis added). In *Pujo*, L&K submitted a loss chart that similarly explained that the "DURA LIFO" total disregarded "losses not attributable to the alleged fraud from intra-class period sales made prior to any corrective disclosure[.]" *See* Exhibit 4.

That the loss charts filed by L&K in *Olsson* and *Pujo* contain loss figures that *explicitly* disclaim any losses that are not recoverable, but no representation was made here (See Dkt. No. 11-4), is revealing. The Court should not accept any argument from Mr. Smith or L&K that they are unable or unwilling to calculate a loss that is recoverable under *Dura*.

## CONCLUSION

For the foregoing reasons, Mr. Harding's motion should be granted in its entirety and competing motions should be denied.

Dated: December 8, 2025

Respectfully submitted,

**FAXON LAW GROUP, LLC**
By /s/Brittany S. Cates (CT27196)
Brittany S. Cates, Esq.
59 Elm Street
New Haven, CT 06510
Telephone: (203) 624-9500
Email: bcates@faxonlawgroup.com

*[Proposed] Liaison Counsel for Movant and the Class*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

8

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Brittany S. Cates(CT27196)
Brittany S. Cates